UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cr-00086-HDM-NJK |
| Plaintiff, | Case No. 2:23-cv-01791-HDM |
| v. | ORDER |
| ANTHONY DELANO HYLTON, JR., | |
| Defendant. | |

Before the court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 440) filed by the defendant, Anthony Hylton ("Hylton"). The government has opposed (ECF No. 443), and Hylton has replied (ECF Nos. 448 & 449).

**I. Background**

On December 5, 2016, LVMPD responded to calls that a vehicle was idling in the middle of a busy Las Vegas intersection. Arriving around 6:13 a.m., Officers Hinkel and Childers found Hylton asleep in the vehicle. They were eventually able to wake him, and he exited the vehicle, telling the officers that his license and registration were in the back. While looking for the documents in the back seat, Officer Hinkel discovered a closed gun case and, in it, a black .45 caliber firearm with brown grips. Hinkel seized the firearm and took it to his patrol car, where he ran a stolen records check.

Meanwhile, Childers conducted three field sobriety tests on Hylton, two of which Hylton failed. After the tests, the officers discussed the results and Childers commented that it was so cold outside, he himself would probably fail. Hinkel

1

testified that at that time both officers were leaning toward the belief that Hylton was not impaired. Childers then spoke with his sergeant, who suggested that a Drug Recognition Expert ("DRE") be dispatched to more fully evaluate whether Hylton was impaired.

While waiting for the DRE, at around 6:41 a.m., the officers again asked for Hylton's license and registration, and Hylton again responded it was in the back of the car. Still unable to locate the documents, the officers asked Hylton for his name and date of birth. After Hylton provided this information, they ran a background check at around 6:43 or 6:44 a.m., which returned the information that Hylton was a felon. At 6:49 a.m., the officers canceled the DRE and arrested Hylton for being a felon in possession of a firearm. In the Computer Aided Dispatch ("CAD") log, Childers noted: "I conducted SFST's on the subject, who had zero clues on HGN. I had requested a unit that was DRE certified, however I believed that my original SFST's sufficiently lead [sic] me to believe that the driver was not under the influence . . ." (ECF No. 440 at 106-06).

A month and a half later, Hylton became a suspect in two robberies of a Henderson Citi Bank that had occurred on October 7, 2016, and January 17, 2017. In both cases, an armed man jumped the teller's counter and then fled in a black Ford Escape with its roof racks pushed all the way back. In the first robbery, the gun discharged, leaving behind an expended cartridge, a bullet and a nonexpended cartridge. Investigators zeroed in on Hylton because surveillance revealed that his girlfriend's vehicle matched the vehicle used in both robberies,

and Hylton, who fit the general description of the robber, was seen leaving his girlfriend's residence. Upon identifying Hylton and learning that he had been arrested in December 2016 with a firearm matching the caliber of that used in the October 2016 robbery, investigating officers sought warrants to search both his residence, located on Lots Hills, and his girlfriend's residence, on Rainbow Blvd. In Hylton's residence, officers recovered Winchester .45 caliber ammunition, a gun holster, and several receipts dated October 7, 2016, apparently for payment of debts. Ballistics tests later returned a match between the gun seized from Hylton at the December traffic stop and the ammunition left behind in in the first robbery.

Hylton was charged with two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), two counts of use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c)(1), and one count (Count 3) of felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (ECF Nos. 8 & 30).[1]

Through counsel Dan Winder, Hylton filed a motion to suppress, arguing, in part, that the traffic stop was impermissibly prolonged (ECF No. 38). The magistrate judge, without an evidentiary hearing, recommended that the motion be denied, and the court adopted the report and recommendation. (ECF Nos. 45 & 52). First through Winder and then through new counsel, the Federal Public Defender's office, Hylton moved for reconsideration. The latter motion asserted that the court had

---

[1] In procedural steps not relevant to the instant motion, the indictment was ultimately superseded two more times. (*See* ECF Nos. 273, 328 & 390). Hylton's conviction on Count Three is pursuant to the third superseding indictment.

not considered the CAD report in concluding that the stop was not unreasonably prolonged. This court granted partial reconsideration and directed the magistrate judge to conduct a limited evidentiary hearing regarding "(1) the duration of the detention and (2) based upon the facts generated as a result of the CAD report, whether or not that period of time was reasonable." (ECF No. 136).

At the evidentiary hearing, Officer Childers testified that he believed Hylton might be impaired up until the time of the arrest. He further testified that although his CAD entry stated that he did not believe Hylton to be impaired, he wrote this note to appease his sergeant, who had done him a favor by calling out the DRE.

After the hearing, Hylton's counsel filed a motion to extend briefing, asking that the court additionally consider (1) whether the officers' testimony about smelling marijuana could be believed, and (2) the impact of the seizure of the firearm from Hylton's vehicle without a warrant. (ECF No. 152). The magistrate judge denied the motion. The magistrate judge then issued a report and recommendation concluding that the stop was unreasonably prolonged past the end of the Field Sobriety Tests. To reach that conclusion, the magistrate judge disregarded Childers' testimony that, at the time he ran the records check, he still believed Hylton might be impaired. Instead, the magistrate judge concluded, the officers no longer believed Hylton might be impaired by the end of their conversations about the FSTs. The report therefore recommended suppression of all evidence found after the stop was unreasonably prolonged, which

in this case amounted only to Hylton's statements about the firearm. (ECF No. 166).

This court did not adopt the magistrate judge's conclusion that the stop was unreasonably prolonged, holding instead that -- for officer safety -- the mission of the stop did not end until after the officers obtained Hylton's identity and were able to run a criminal background check. The court also concluded that, even if it agreed with the magistrate judge that the stop had been unreasonably prolonged, suppression was not warranted under the inevitable discovery doctrine.

Trial on Counts One, Two, Four and Five were tried before a jury on April 2, 2019. On April 4, 2019, the jury found Hylton guilty on all four counts. In a bifurcated bench trial on the felon in possession charge -- Count Three -- that followed, the court found Hylton guilty of that charge, as well.

Before Hylton was sentenced, the parties agreed that, under the recent Supreme Court decision of *Rehaif v. United States*, 588 U.S. 225 (2019), Count Three should be vacated and reset for trial. Hylton later filed a motion to represent himself, which ultimately was granted. Shortly after the motion was granted, Hylton filed a motion to dismiss for spoliation and a motion to suppress, both of which were denied. Hylton's motion for reconsideration was also denied.

Instead of proceeding to another bench trial, Hylton entered a plea of guilty to Count Three. At the change of plea, the parties and the court amply discussed all parties' understanding that Hylton was waiving his appellate rights with respect only to Count Three. (*See* ECF No. 406 (Tr. 18-20)).

5

Hylton filed a notice of appeal. The Ninth Circuit affirmed in a published opinion, holding, in relevant part, that the criminal history check was a negligibly burdensome precaution necessary to complete the stop safely, and therefore the stop was not unreasonably prolonged. The appeals court further held that the court's "straight-forward application of the inevitable discovery rule was not clearly erroneous." *United States v. Hylton*, 30 F.4th 842, 848 (9th Cir. 2022).

After his petition for writ of certiorari was denied by the Supreme Court,[2] Hylton filed the instant § 2255 motion.

## II. Standard

Pursuant to 28 U.S.C. § 2255, a federal inmate may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* § 2255(a).

## III. Analysis

Hylton raises the following claims in his motion: (1) the district court erred in not holding its own evidentiary hearing before departing from the magistrate judge's credibility findings; (2) the government knowingly introduced false testimony at the evidentiary hearing; (3) appellate counsel was ineffective for failing to raise the failure to hold an

---

[2] *See* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-5741.html (last visited Mar. 17, 2025).

evidentiary hearing; (4) appellate counsel was ineffective for failing to raise the court's denial of the motion to extend briefing; (5) all trial counsel were ineffective for failing to challenge the search warrant for Hylton's residence at Lots Hills; and (6) attorney Winder was ineffective for failing to contest the continued warrantless seizure of the firearm past the records check.[3]

A. Substantive Claims

i. Waiver

Preliminarily, the government asserts that by way of his plea agreement to Count Three, Hylton has waived all of his collateral changes save and except for non-waivable ineffective assistance of counsel claims. Except as to Count Three, the court disagrees.

"As a general rule, a defendant may waive his right . . . collaterally to attack his plea or sentence" and "[s]uch a waiver is enforced if (1) the language of the waiver encompasses the defendant's right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Rodriguez*, 49 F.4th 1205, 1211–12 (9th Cir. 2022) (internal punctuation and citations omitted). In his plea, Hylton "knowingly and expressly waive[d] all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-

---

[3] The government argues that Hylton's motion fails to meet pleading standards. The court disagrees. The claims are adequately presented, and the government was able to fully respond to them.

waivable claims of ineffective assistance of counsel." (ECF No. 374 at 12). However, the plea agreement pertains to only Count Three, and the discussion at the change of plea hearing makes clear that Hylton believed he was waiving his appellate and collateral challenge rights with respect to Count Three only. Even if the plea agreement could somehow be read to encompass appellate and collateral challenges for all counts, the discussion at the change of plea hearing requires a finding that Hylton did not knowingly and voluntarily relinquish his right to collaterally challenge as to *all* counts. Accordingly, the government's argument that the substantive claims at issue in this motion have been waived is denied. Hylton's substantive claims are waived only with respect to Count Three. Thus, as to Counts One, Two, Four and Five, the court addresses the substantive claims.[4]

ii. Analysis

a. Failure to Conduct Evidentiary Hearing

Hylton's first claim for relief asserts that his Due Process rights were violated when the court rejected the magistrate judge's credibility finding without holding an evidentiary hearing of its own.

"Federal habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala*, 576 U.S. 257, 257 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

---

[4] The substantive claims would likely be procedurally defaulted, but because the government has not raised this defense, it is deemed waived. *See United States v. Barron*, 172 F.3d 1153, 1156–57 (9th Cir. 1999).

(1993)); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht*'s harmless error standard applies to habeas cases under § 2255[.]"). "Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 576 U.S. at 268 (internal quotations and citations omitted).

In ruling on Hylton's motion to suppress and the magistrate judge's report and recommendation, the court held:

> Still unsure whether Hylton was impaired, the officers, even though they thought perhaps he was not impaired, believed that it was appropriate, under the circumstances, for safety concerns, especially with somebody that didn't have a driver's license, insurance, or anything that even permitted him to go ahead and drive the car, until that was verified, they determined that they should have backup with DRE. And the sergeant advised them that that was standard practice. And that's exactly what they followed.
>
> . . .
>
> Now, if the Court had found, which I have not, as the magistrate judge did, that after 20 minutes, instead of the 31 minutes when they were waiting for the other officer to arrive, because one of the officers had some doubt as to the sobriety of the defendant, after they had had a discussion and said he may not be impaired, but they still weren't satisfied, and had the additional agent coming out, if the Court had determined, as the magistrate judge did, that that's when it ended in terms of the reasonableness of the stop, which I don't concur with because of the fact he didn't have registration, didn't have a license, hadn't given proper identification to the officers, and, in fact, had failed two of the three sobriety tests, and under the very unusual circumstances where they found him . . . if the Court had found, as the magistrate judge did, then there was a basis for what the magistrate judge held, but, in addition, even if the Court had determined he was -- that the stop was too extended under the circumstances, the criminal history would not be suppressed.

(ECF No. 230 at 18, 20-22).

1     The court did not explicitly reject the magistrate judge's
2 credibility finding. Rather, the court rejected the magistrate
3 judge's legal conclusion that the stop was unreasonably
4 prolonged past the point of the FSTs. But even if the court's
5 statements could be interpreted to implicitly reject the
6 magistrate judge's credibility finding, any error would be
7 harmless. The court clearly held that regardless of whether the
8 officers continued to believe Hylton was impaired, the prolonged
9 traffic stop was reasonable in the interest of public safety
10 because Hylton had not provided his identification and other
11 required documentation. The magistrate judge's limited
12 credibility finding thus had no impact on the court's ultimate
13 conclusion that the stop was reasonably prolonged to run a
14 criminal history check, a finding that was affirmed by the Ninth
15 Circuit on appeal. Thus, as Hylton cannot show actual prejudice,
16 he has not established a due process violation and is not
17 entitled to relief on this ground.

18              b. *Napue*

19     Hylton's second claim for relief asserts that the
20 prosecutor committed misconduct by knowingly introducing
21 Childers' allegedly false testimony in violation of *Napue v.*
22 *Illinois*, 360 U.S. 264 (1959) and *Mooney v. Holohan*, 294 U.S.
23 103 (1935) (per curiam).[5]

24     A defendant's due process rights are violated when a
25 prosecutor obtains a conviction by knowingly introducing false

---

26
27 [5]  The government has construed the second claim for relief, in
part, as a claim that it improperly withheld *Brady* evidence.
28 However, Hylton has stated that he has not and is not raising
any such claim. (*See* ECF No. 448 at 7).

evidence or, knowing evidence is false, allowing it to go uncorrected. *Napue*, 360 U.S. at 269-71. To prevail on a *Mooney-Napue* claim, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

Hylton's arguments do not establish that Childers' testimony was actually false or -- more importantly -- that the government knew or should have known it was false. Furthermore, for the reasons set forth above, Hylton has not established that Childers' allegedly false testimony was material. Independent of Childers' subjective beliefs regarding Hylton's impairment, the prolonged stop was reasonable for the running of a criminal-history check. Accordingly, Hylton is not entitled to relief on this claim.

B. Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles*

*v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696.

i. Failure to Appeal Rejection of Credibility Finding

Hylton argues that his counsel was ineffective for failing to argue on appeal that the court improperly rejected the magistrate judge's credibility finding. As discussed above, the substantive claim underlying this ineffective assistance of counsel claim is without merit. It is not reasonably likely, then, that any such argument would have been successful on appeal, and Hylton therefore cannot establish prejudice. Further, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Given the court's finding that the stop was reasonably prolonged regardless of the officers' subjective beliefs, it was not deficient for appellate counsel to omit this claim on appeal. Hylton has not established a basis for relief on this claim.

ii. Failure to Appeal Motion to Extend Briefing

Hylton's next claim for relief asserts that appellate counsel was ineffective for failing to raise the denial of the motion to extend briefing. As set forth above, the motion had asked the court to consider whether the officers' testimony about smelling marijuana was credible and the impact of the seizure of the firearm from the vehicle without a warrant.

12

Hylton has not established a reasonable likelihood that such a claim would have had success on appeal, particularly given this court's and the Ninth Circuit's understanding that the incursion into the backseat was justified to collect Hylton's documentation and not necessarily because the officers claimed to have smelled marijuana. Further, as just noted, appellate counsel should not necessarily file every nonfrivolous claim on appeal. *Smith*, 528 U.S. at 288. Hylton has not shown that this claim had such a strong likelihood of success on appeal that counsel's failure to raise it fell outside the wide range of reasonable representation. He has not therefore established deficient performance.

As to the warrantless seizure of the firearm, Hylton does not provide any specific argument here, choosing instead to cite his argument in support of his last claim for relief. (*See* ECF No 440 at 66 & 82-88). However, the last claim for relief raises a totally distinct issue that does not speak at all to the warrantless seizure of the firearm. This part of Hylton's claim is therefore conclusory and unsupported. Moreover, even if it has been adequately briefed, the claim at any rate lacks merit. The court clearly and repeatedly held that seizure of the firearm from Hylton's vehicle was justified for officer safety. Extending briefing on this issue would not have changed this result, and because appellate counsel was aware of the court's finding in this regard, her choice not to include it among the appellate issues was certainly within the wide range of reasonably competent representation. Hylton is not entitled to relief on this claim.

           iv. Failure to Challenge Warrant for Hylton's Home

Hylton's next claim for relief asserts that his attorneys were ineffective for failing to challenge the warrant to search his home on Lots Hills. Specifically, he argues that the warrant request was invalid because it was nearly identical to the request for his girlfriend's residence and did not establish a nexus between the robberies and his home, because it improperly narrowed the description of the robber to make it appear that he more closely matched the description than he actually did, and because it did not contain pictures of the two other black Ford Escapes that were investigated to prove they did not have roof racks like the suspect vehicle. Hylton can establish neither deficient performance nor prejudice.

First, the fact that the warrant for Lots Hills repeated language in the warrant for Rainbow Blvd. does not render the warrant request invalid because largely the same facts that supported probable cause for Hylton's girlfriend's house supported probable cause for Hylton's own home at Lots Hills. It was a reasonable inference that Hylton had at least as much access to his own home as he did his girlfriend's home. It was also a reasonable inference that evidence of the crimes might be found at Hylton's own home, which established the nexus that Hylton argues was lacking. *See United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985) ("It was a reasonable inference that Jackson might keep stolen currency in his apartment from a bank robbery two months earlier.").

Second, while it is true that the eyewitness statements ranged from 5'10" to 6'5" and that the affidavit narrowed the

14

range (from both ends) to 6'0" to 6'4", this minor narrowing did not significantly alter the probable cause calculus. Despite Hylton's argument that the only thing tying him to the robberies was that he fit a very general and broad description, there was of course more to it than that. Hylton fit the height description, was observed at the residence where a vehicle matching the suspect vehicle was located, and was arrested between the two robberies with a gun that matched the description of the gun used in the first robbery. This last fact was particularly compelling given that first and second robbers were believed to be the same person and in the second incident the robber used a different firearm.

Finally, as to the argument that the warrant lacked photographic proof that the other two black Ford Escapes did not have roof racks, Hylton cites no law requiring such documentation to support a warrant request. Further, even if documentary evidence were required, Hylton has not carried his burden to establish that photographs of the other two vehicles would have contradicted the officers' sworn statements in the affidavit.

In light of all this, Hylton has not also established either that the court would have ordered a *Franks* hearing or that, ultimately, the search warrant would have been voided for lack of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 156, 171-72 (1978). Thus, Hylton's attorneys were not ineffective for failing to raise what was a meritless claim. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). Nor, for

the same reasons, did their failure cause Hylton prejudice. Hylton is not entitled to relief on this claim.

v.    Failure to Move to Suppress Based on Continued Seizure of Firearm

Hylton's final claim for relief asserts that his attorney was ineffective for failing to raise, in the initial motion to suppress, that suppression of the firearm was warranted due to its "continued warrantless seizure" after the running of the stolen records check. (*See* ECF No. 440 at 83-84). He argues that the running of the stolen records check was a violation of his Fourth Amendment rights and converted the lawful seizure into an unlawful one. (*See id.* at 84-85).

Hylton has cited no case law supporting his argument that a stolen records check can convert a lawful seizure of a firearm into an unlawful seizure requiring suppression. The case law he cites supports suppression of evidence *after* a Fourth Amendment violation occurred, not before. The closest he comes is the case of *United States v. Shipley*, which he claims stands for the proposition that "officer's seizure of firearm initially lawful for officer safety, but subsequently unlawful after seizing officer runs stolen records check on the firearm." (*Id.* at 85). *Shipley*, however, did not actually make this finding. Rather, it held only that the serial number should be suppressed, not the lawfully seized firearms themselves. *See United States v. Shipley*, 2017 WL 2350166, at *4 (D. Ariz. May 31, 2017), *aff'd*, 777 Fed. App'x 203 (9th Cir. 2019). Accordingly, as Hylton has not shown this would have been a meritorious argument, counsel was not deficient for failing to raise it, and his failure to do

so did not cause Hylton prejudice. Accordingly, Hylton is not entitled to relief on his final claim.

## IV. Request for Evidentiary Hearing

The court is not required to conduct a hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion and files and records of this case conclusively show that Hylton is not entitled to relief, his request for an evidentiary hearing will be denied.

## V. Certificate of Appealability

In order to proceed with an appeal, Hylton must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a defendant must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, Hylton has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by Hylton, with respect to whether they satisfy the standard for issuance of a

certificate of appealability, and determines that none meet that standard. Accordingly, Hylton will be denied a certificate of appealability.

**VI. Conclusion**

In accordance with the foregoing, IT IS ORDERED that Hylton's 28 U.S.C. § 2255 motion (ECF No. 440) is DENIED.

IT IS FURTHER ORDERED that Hylton is DENIED a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED: This 14th day of April, 2025.

_____
UNITED STATES DISTRICT JUDGE